```
                 IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                              - - -

UNITED STATES OF AMERICA      :  CRIMINAL NO. 11-577-1
                              :
              v.              :  Philadelphia, Pennsylvania
                              :  March 26, 2012
VINCENT JOSEPH DEMSKY         :  9:31 o'clock a.m.
. . . . . . . . . . . . . . .

                     CHANGE OF PLEA HEARING
             BEFORE THE HONORABLE TIMOTHY R. RICE
                 UNITED STATES MAGISTRATE JUDGE

                              - - -

APPEARANCES:

For the Government:      ASHLEY K. LUNKENHEIMER, ESQUIRE
                         U.S. Attorney's Office
                         615 Chestnut Street, Suite 1250
                         Philadelphia, PA   19106


For the Defendant:       JAMES LAMMENDOLA, ESQUIRE
                         Lammendola & Lammendola
                         1500 Walnut Street, Suite 1100
                         Philadelphia, PA   19102


Also Present:            Lee Salzburg
                         U.S. Pretrial Services Office
                         William J. Green Federal Building
                         600 Arch Street, Room 4408
                         Philadelphia, PA   19106


                              - - -

Audio Operator:          Nelson Malave

Transcribed by:          Tracey J. Williams, CET

(Proceedings recorded by For the Record Gold digital sound
recording; transcript produced by AAERT-certified
transcriber.)


                   Laws Transcription Service
                     48 W. LaCrosse Avenue
                     Lansdowne, PA 19050
                       (610)623-4178
```

1          (The following occurred in open court at 9:31

2   o'clock a.m.:)

3          THE COURT:  Good morning.  Please be seated.

4          ALL:  Good morning, your Honor.

5          THE COURT:  You guys switched tables on me.

6          MR. LAMMENDOLA:  Oh, my fault.

7          THE COURT:  That's all right.

8          MS. LUNKENHEIMER:  I didn't want to make him move.

9          THE COURT:  Officer Binns, how are you?

10         OFFICER BINNS:  Good.  How are you?

11         THE COURT:  Good to see you.

12         All right.  Nelson is our court reporter, I think

13  everybody knows him.  Thanks, Nelson, for coming up.

14         THE AUDIO OPERATOR:  Good morning, your Honor.

15         THE COURT:  And these are our Temple students, Tony

16  Rock -- Tony is a graduate, I'm sorry, he's our new law clerk

17  here, and Dee Gobel (ph.) and my law clerk, Amy Schelhammer.

18  And you guys know Chavela, right?

19         Mr. Lammendola, good to see you.

20         MR. LAMMENDOLA:  Same here, Judge.

21         THE COURT:  Mr. Demsky, good morning.

22         THE DEFENDANT:  Good morning.

23         THE COURT:  All right.  We were going to have a

24  trial today, but we're not.

25         MS. LUNKENHEIMER:  Apparently not.

1          MR. LAMMENDOLA:  Right.

2          THE COURT:  So is it true that you want to plead

3    guilty, Mr. Demsky?

4          THE DEFENDANT:  Yes.

5          THE COURT:  All right.  Before we get to that, I

6    want to ask -- Nelson, could you swear Mr. Demsky, please?

7          THE AUDIO OPERATOR:  Please rise and raise your

8    right hand.

9          VINCENT JOSEPH DEMSKY, Sworn.

10         THE AUDIO OPERATOR:  Please state your full name for

11   the record.

12         THE DEFENDANT:  Vincent Joseph Demsky.

13         THE AUDIO OPERATOR:  Thank you.

14         THE COURT:  Thank you, sir.

15         Sir, before we go any further, I want to explain to

16   you that I'm a Magistrate Judge and you have a right to have

17   your case done by a -- or handled by a District Court Judge

18   -- it would be Judge Jones, I believe?

19         MS. LUNKENHEIMER:  Yes, your Honor.

20         THE COURT:  And do you understand that you have

21   waived that and you're going to agree to proceed before me?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Okay.  You don't have to do that if you

24   don't want to.

25         THE DEFENDANT:  Right, I understand.

1          THE COURT:  Okay, great.

2          Now, sir, if I say anything today that you don't

3     understand or if you need to interrupt me to explain

4     something, just tell me.  And if you need to speak with Mr.

5     Lammendola --

6          THE DEFENDANT:  Okay.

7          THE COURT:  -- he's a very experienced lawyer, we

8     can take time to let you talk to him if you're confused or

9     don't understand anything.

10         THE DEFENDANT:  Okay, thank you.

11         THE COURT:  All right?  And your full name is

12    Vincent Joseph Demsky, is that what I heard?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Okay.  And how old are you, sir?

15         THE DEFENDANT:  I'm 50.

16         THE COURT:  Okay.  And can you read, write and speak

17    English?

18         THE DEFENDANT:  Yes.

19         THE COURT:  All right.  And how far did you go in

20    school?

21         THE DEFENDANT:  I quit school in 11th grade.

22         THE COURT:  Okay.  And have you ever had or been

23    treated for drug or alcohol addiction or mental illness?

24         THE DEFENDANT:  Uh, drug addiction.  I was in a

25    rehab when I was younger, in my early 20s.

1          THE COURT:  Okay.

2          THE DEFENDANT:  I was really a little wild cat when

3    I was in my 20s, but --

4          THE COURT:  Yeah, I think a lot of us --

5          THE DEFENDANT:  -- you know, it's changed now.

6          THE COURT:  -- a lot of us were.  I don't know about

7    Ms. Lunkenheimer, but --

8          (Laughter.)

9          MS. LUNKENHEIMER:  I wasn't allowed to be, your

10   Honor.

11         THE COURT:  Yes.  If you knew her dad, you knew that

12   wasn't permitted, right?

13         (Laughter.)

14         THE COURT:  Mr. Lammendola knows her dad.

15         MR. LAMMENDOLA:  That's right.

16         THE COURT:  Okay.  Are you currently in any type of

17   drug treatment?

18         THE DEFENDANT:  Uh, I'm on Suboxone.  I was

19   prescribed Oxycontin when this happened and I was prescribed

20   it after years for my back, I had a little back trouble, but

21   I'm off of it.

22         MR. LAMMENDOLA:  Your Honor, if the Court pleases,

23   he's on Suboxone medication right now to -- prescribed by his

24   doctor for the purposes of weaning him off any kind of

25   Oxycontin addiction.

1          THE COURT:  Right, I noticed that on the Pretrial

2     Services drug test.

3          THE DEFENDANT:  Yeah.

4          MR. LAMMENDOLA:  Yes.

5          MS. LUNKENHEIMER:  Yes, your Honor.  I mentioned to

6     Mr. Lammendola to make sure that it was understood, because

7     we have charged some people with buying and selling Suboxone,

8     so those would be improper uses.  In his case, if he's under

9     proper medical care, it can be properly used to help you

10    withdraw from Oxycodone.

11         THE COURT:  Okay.

12         THE DEFENDANT:  I've given Lourdes Roscoe my

13    prescriptions and everything and showed them to her.

14         THE COURT:  Right.  Okay, very good.  And are you

15    feeling all right today?

16         THE DEFENDANT:  I'm feeling great.

17         THE COURT:  Okay.

18         THE DEFENDANT:  A hundred percent, real good.

19         THE COURT:  That's good.

20         THE DEFENDANT:  Totally different.

21         THE COURT:  Because of the medicine?

22         THE DEFENDANT:  Yeah.

23         THE COURT:  Okay.  And can you hear and understand

24    me --

25         THE DEFENDANT:  Yes, yes, I can.

1       THE COURT:  -- adequately?

2           Now, has Mr. Lammendola gone over the charges

3   against you and fully explained your trial rights and the

4   defenses you could bring to those charges?

5           THE DEFENDANT:  Yes, he has.

6           THE COURT:  All right.  Now, I understand you're not

7   signing a plea agreement, you're just going to plead what we

8   call open to the charges without any agreement --

9           THE DEFENDANT:  Right.

10          THE COURT:  -- from the Government?

11          THE DEFENDANT:  Yes.

12          THE COURT:  So that means the Government is free to

13  do whatever they want in terms of sentencing recommendations,

14  there's no agreement on what the sentencing range will be.

15          THE DEFENDANT:  Right.

16          THE COURT:  So you're just going to see where it

17  goes?

18          THE DEFENDANT:  Throw myself on the mercy of the

19  Court, yeah.

20          THE COURT:  Okay.  Now, have you had enough time to

21  talk your case over with Mr. Lammendola?

22          THE DEFENDANT:  Oh, yes.

23          THE COURT:  Okay.  So far has he done everything

24  you've wanted him to do?

25          THE DEFENDANT:  Yes, he has --

1          THE COURT:  All right.  I noticed he --

2          THE DEFENDANT:  -- more than enough.

3          THE COURT:  -- he filed numerous motions, including

4    one alleging that the Government engaged in outrageous

5    conduct.

6          THE DEFENDANT:  Yeah.

7          THE COURT:  Now -- which is a pretty serious

8    allegation.  Now, you're going to be giving up that motion

9    and all the other issues you raised if you plead guilty.

10          THE DEFENDANT:  I understand.

11          THE COURT:  Okay.  And I won't ask the Government to

12    summarize the terms of the plea, because there's no plea

13    agreement, but did the Government make any promises to you

14    either through Mr. Lammendola or privately that are not

15    memorialized anywhere?

16          THE DEFENDANT:  No.

17          THE COURT:  Okay.  Do you agree with that, Mr.

18    Lammendola?

19          MR. LAMMENDOLA:  I do, your Honor.

20          THE COURT:  All right.  Did anyone else promise you

21    anything to get you to plead guilty?

22          THE DEFENDANT:  No.

23          THE COURT:  For example, did Mr. Lammendola urge you

24    to plead guilty for whatever reason?

25          THE DEFENDANT:  No.

1    THE COURT:  Okay.  So this is totally your decision?

2    THE DEFENDANT:  Yes.

3    THE COURT:  All right.  Do you understand that no

4 one can guarantee you what the sentence you will receive from

5 me will be?

6    THE DEFENDANT:  I understand.

7    THE COURT:  Okay.  Did anyone use force, violence or

8 threats to get you to plead guilty?

9    THE DEFENDANT:  No.

10    THE COURT:  Are you pleading guilty because of your

11 own free will?

12    THE DEFENDANT:  Yes.

13    THE COURT:  All right.  Did anyone tell you what to

14 say today or put words in your mouth?

15    THE DEFENDANT:  No.

16    THE COURT:  Do you understand that you're entering a

17 plea to a misdemeanor and you will be adjudged guilty of that

18 charge, which may deprive you of valuable civil rights such

19 as the right to vote or hold public office or serve on a

20 jury?

21    THE DEFENDANT:  I understand.

22    THE COURT:  I'm not sure if that applies to

23 misdemeanors, but -- do you know, Ms. Lunkenheimer?

24    MS. LUNKENHEIMER:  Your Honor, honestly, I don't

25 know the answer either.

1       THE COURT:  Okay.  Well, that's a possibility.

2       THE DEFENDANT:  Right.

3       THE COURT:  You're a United States citizen?

4       THE DEFENDANT:  Yes.

5       THE COURT:  Okay.  Do you understand that your

6  offense is covered by the Sentencing Guidelines, and they're

7  a range that's prescribed by the Sentencing Commission and

8  they give a recommended term of sentence that I may or may

9  not be required to impose?

10      THE DEFENDANT:  Yes.

11      THE COURT:  Okay.  And that a Probation Officer will

12  prepare a presentence report, which will set out your

13  Guideline range?

14      THE DEFENDANT:  Okay.

15      THE COURT:  And if you disagree with the presentence

16  report, your guilty plea is still binding on you.  Do you

17  understand that?

18      THE DEFENDANT:  Okay, yes.

19      THE COURT:  All right.  But you can contest the

20  report, Mr. Lammendola can raise objections to it and we can

21  have a hearing before sentencing if necessary.

22      THE DEFENDANT:  Okay.

23      THE COURT:  Do you understand that?

24      THE DEFENDANT:  Right.

25      THE COURT:  All right.  Do you understand that the

1  drug amounts and the type of drugs involved can have a
2  significant effect on your Sentencing Guideline range?
3        THE DEFENDANT:  Yes.
4        THE COURT:  And there are circumstances where --
5  well, he couldn't be held responsible for anybody else's drug
6  weight, is that correct?
7        MS. LUNKENHEIMER:  Right, your Honor.
8        THE COURT:  Okay.  Now, do you understand that your
9  attorney and the Government can agree on facts and make
10  recommendations, motions or requests at sentencing, but I
11  don't have to do what they ask me to do?
12        THE DEFENDANT:  I understand, yes.
13        THE COURT:  Okay?  But your plea will still be
14  binding whether or not I agree with the facts and
15  recommendations of the Government and your lawyer.
16        THE DEFENDANT:  Yes.
17        THE COURT:  Do you understand that?
18        THE DEFENDANT:  Yes.
19        THE COURT:  Okay.
20        MS. LUNKENHEIMER:  Your Honor, just to go back to
21  that point.  We're not -- he was charged with buying, so it's
22  simple possession charges.  There may be relevant conduct
23  that I can't say at this moment that we may present at
24  sentencing, but it would be his relevant conduct, it --
25        THE COURT:  Okay, very good.

1          Do you understand that there's no more parole and

2    that, if a sentence of imprisonment is imposed, you would

3    have to serve the whole time of imprisonment that you're

4    sentenced to?

5          THE DEFENDANT:  I understand.

6          THE COURT:  Okay.  Do you understand that you have a

7    right to appeal your sentence to a higher court, which could

8    modify or set aside the sentence or order me to resentence

9    you?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And by pleading without a plea agreement

12    you're retaining all your appellate rights?

13          THE DEFENDANT:  Yes.

14          THE COURT:  So you'll be able to challenge, for

15    example, anything that happens in this proceeding --

16          THE DEFENDANT:  Okay.

17          THE COURT:  -- you'll be able to challenge anything

18    that happens at the sentencing.

19          THE DEFENDANT:  All right.

20          THE COURT:  Now, the Government could also appeal

21    the sentence.  Do you understand that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  All right.  Now, there's certain

24    constitutional rights that I want to go over with you.  Do

25    you have any questions so far?

1        THE DEFENDANT:  No.

2        THE COURT:  Okay.  Do you understand that you're

3    presumed innocent and, until you're proven guilty by the

4    Government beyond a reasonable doubt, that presumption will

5    continue?  So, as you sit here today, you're presumed

6    innocent --

7        THE DEFENDANT:  Okay.

8        THE COURT:  -- until I accept your plea.

9        THE DEFENDANT:  Okay.

10        THE COURT:  All right?  Do you understand that you

11    have a right to the assistance of a lawyer at every stage of

12    the proceedings, including before trial, during trial, after

13    trial and for any appeals to higher courts?

14        THE DEFENDANT:  I understand.

15        THE COURT:  All right.  Do you understand that if

16    you cannot afford a lawyer, I would appoint a lawyer for you

17    free of charge?

18        THE DEFENDANT:  Yes.

19        THE COURT:  So if you're pleading guilty just

20    because you think you can't afford to pay Mr. Lammendola for

21    trial, I can get you a free lawyer, so don't plead guilty for

22    that reason.

23        MR. LAMMENDOLA:  Judge, I'm CJA-appointed on this.

24        (Laughter.)

25        THE COURT:  All right, okay.  So you're appointed

1  already.  Okay.

2        Do you understand you have a right to plead not

3  guilty and persist in that plea and have your case tried by a

4  jury of 12 --

5        THE DEFENDANT:  Yes.

6        THE COURT:  -- or by me?

7        THE DEFENDANT:  Yes.

8        THE COURT:  All right.  Do you understand that you

9  have a right to a jury of your peers drawn from residents in

10  this district and that you would get help in selecting a

11  jury?

12        THE DEFENDANT:  Yes.

13        THE COURT:  Mr. Lammendola would help you with that.

14        Do you understand that in order to find you guilty

15  the verdict of the jury must be unanimous, that means that

16  all 12 jurors must agree that you were proven guilty by the

17  Government beyond a reasonable doubt?

18        THE DEFENDANT:  Yes.

19        THE COURT:  All right.  Do you understand that you

20  could obtain a subpoena or court order to bring witnesses to

21  court to testify at trial on your behalf?

22        THE DEFENDANT:  Yes.

23        THE COURT:  Do you understand that if you're found

24  guilty, you could appeal such a finding of guilt to a higher

25  court, which could set aside or modify the finding of guilt

1  or give you a new trial?

2       THE DEFENDANT:  Yes.

3       THE COURT:  Do you understand that at trial you

4  would have the right to confront and cross-examine witnesses?

5  That is to be in the courtroom and see your witnesses face-

6  to-face, hear and question what they had to say --

7       THE DEFENDANT:  Yes.

8       THE COURT:  -- for every witness the Government

9  presents?

10       THE DEFENDANT:  Yes.

11       THE COURT:  All right.  And by pleading guilty

12  you're giving up that right to confront the people who are

13  testifying against you.

14       THE DEFENDANT:  Yes.

15       THE COURT:  Do you understand that?

16       THE DEFENDANT:  Yes.

17       THE COURT:  All right.  Do you understand that at a

18  trial you do not have to testify or take the witness stand if

19  you don't want to?

20       THE DEFENDANT:  Okay.

21       THE COURT:  Do you understand that?

22       THE DEFENDANT:  Yes.

23       THE COURT:  Do you understand that no one can force

24  you to do that and, if you elect not to take the witness

25  stand, the Assistant United States Attorney, Ms.

1   Lunkenheimer, cannot comment on or make reference to your
2   failure to testify?
3           THE DEFENDANT:  Yes.
4           THE COURT:  All right.  Do you understand that by
5   entering this guilty plea there will be no trial and you're
6   giving up many of the rights that I have told you about and
7   you will be admitting that you are guilty of the crime
8   charged in the information?
9           THE DEFENDANT:  Yes.
10          THE COURT:  All right.  Ms. Lunkenheimer -- the
11  Government would have to prove -- let me ask one more
12  question before I call on Ms. Lunkenheimer.
13          In order to prove you guilty, the Government would
14  have to prove each of the following elements beyond a
15  reasonable doubt.  Now, these are the legal things the
16  Government would be required to show in order to convince
17  someone you're guilty and I'm going to ask the prosecutor to
18  outline what those elements are now.
19          THE DEFENDANT:  Okay.
20          MS. LUNKENHEIMER:  Yes, your Honor.  If this case
21  were to go to trial, the Government would prove beyond a
22  reasonable doubt the following things:  That the Defendant
23  intended to commit the crime of illegally possessing a
24  controlled substance, in this case a mixture or substance
25  containing a detectable amount of Oxycodone, and thereafter

1   the Defendant did an act constituting a substantial step

2   towards the commission of that crime which strongly

3   corroborates the Defendant's criminal intent.

4           THE COURT:  Do you understand what she said, Mr.

5   Demsky?

6           THE DEFENDANT:  Yes.

7           THE COURT:  Do you have any questions about that?

8           THE DEFENDANT:  No.

9           THE COURT:  Have you talked that over, those legal

10  requirements over with Mr. Lammendola?

11          THE DEFENDANT:  Yeah.

12          THE COURT:  All right.  How about the maximum

13  penalties --

14          MS. LUNKENHEIMER:  Yes, your Honor.

15          THE COURT:  -- could you outline those?

16          MS. LUNKENHEIMER:  The following statutory maximum

17  sentence applies in this case:  For Count 1, which is the

18  only count, attempted possession of Oxycodone, the maximum is

19  one year in prison, a maximum of one year of supervised

20  release, a $1,000 fine and a $100 special assessment.

21          The Defendant also needs to understand that if

22  supervised release is imposed and its terms and conditions

23  are violated, then the Defendant could face up to an

24  additional term of imprisonment, in this case up to one year

25  for the count of conviction, and that would be without

1   necessarily receiving any credit for time already served on
2   the actual sentence.

3           THE COURT:  Okay.  Do you understand that, sir?

4           THE DEFENDANT:  Yes.

5           THE COURT:  So that's the maximum penalty that you
6   could receive if you enter your guilty plea and that would be
7   as far as I could go in sentencing you?

8           THE DEFENDANT:  Okay.

9           THE COURT:  Okay?

10          THE DEFENDANT:  Yes.

11          THE COURT:  That's not what -- we don't know what
12  sentence the Guidelines will call for, but that's the worst-
13  case scenario.

14          Now, is there any collateral consequences with
15  respect to Mr. Demsky's employment?

16          MS. LUNKENHEIMER:  Your Honor, it's my understanding
17  that there are, there may be anyway, we are not involved in
18  that decision.  As I understand it, the Boeing Company has
19  placed everybody on some sort of status where they're no
20  longer working at the plant and then they're up for hearings,
21  and they have certain arbitration and other rights under the
22  collective bargaining agreement.  We are, again, not involved
23  in that, but a finding of guilt may affect their decision as
24  to whether to terminate them or not.  Mr. Lammendola can
25  probably speak better to that.

1      MR. LAMMENDOLA:  Judge, what I know right now is

2  he's suspended, I don't know -- I think perhaps Boeing may

3  take him back with a misdemeanor charge, but --

4      THE DEFENDANT:  I'm suspended without pay, but I

5  have health insurance.  They're paying my health insurance,

6  so I can continue seeing the doctor, and the union wants to

7  get me back.  There's a handful of us that want to -- that

8  the bosses and managers want back, I'm one of them because of

9  my work record, and -- and that's --

10      THE COURT:  Okay.

11      THE DEFENDANT:  -- that's it.

12      THE COURT:  All right.  You can be seated, sir.

13  Thank you.

14      Well, I just want you to understand that it sounds

15  like there's a possibility --

16      THE DEFENDANT:  There's a very strong possibility

17  that I could get my job back --

18      THE COURT:  All right.

19      THE DEFENDANT:  -- because the managers and -- I

20  mean, I was a good worker, I -- the week before this

21  happened, I had actually set a record for getting the most

22  blades done by one guy and I never even got the award because

23  of this happening, you know.

24      THE COURT:  Okay.  All right.  Well, I just want you

25  to understand that by pleading guilty there's a possibility

1   that that may impact whether you get your job back.  So I

2   want to make sure you've thought that through --

3               THE DEFENDANT:  Yes.

4               THE COURT:  -- because it sounds like Ms.

5   Lunkenheimer doesn't have control over that.

6               THE DEFENDANT:  No, she doesn't.

7               THE COURT:  Your lawyer acknowledges that it could

8   have an impact, but we're not sure yet.  So I want to make

9   sure you've thought that through before you enter a guilty

10  plea.

11              THE DEFENDANT:  Yes, we did.

12              THE COURT:  All right.  So, despite the fact that it

13  could affect whether you get your job back, you're willing to

14  plead guilty?

15              THE DEFENDANT:  Absolutely, yes.

16              THE COURT:  Did you talk that over with Mr.

17  Lammendola?

18              THE DEFENDANT:  Yes, I have.

19              THE COURT:  Okay.  All right.  I just want to make

20  sure that's the case.

21              Ms. Lunkenheimer, could you please summarize for Mr.

22  Demsky the facts that the Government would offer at trial?

23              And, Mr. Demsky, what I want you to do is I want you

24  to listen to Ms. Lunkenheimer, because I'm going to ask you

25  after she's done whether or not that is in fact what you did

1    and whether you admit to doing what she said.

2            MS. LUNKENHEIMER:  Yes, your Honor.  If this case

3    were to proceed to trial, the Government would prove beyond a

4    reasonable doubt that on September 22nd, 2011 the Defendant

5    met with an individual cooperating with the Government inside

6    of a building on Boeing Company's Ridley Park, Pennsylvania

7    campus.  There the Defendant bought two placebo Oxycontin 80-

8    milligram tablets from the cooperating source for $80.

9    That's what's charged in Count 1.  And just to be clear,

10   Oxycontin would contain if it were not a placebo the active

11   ingredient of Oxycodone and Ridley Park is in the Eastern

12   District of Pennsylvania.

13           THE COURT:  Okay.  Mr. Demsky, did you hear what Ms.

14   Lunkenheimer said?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Do you admit that that's exactly what

17   you did?

18           THE DEFENDANT:  Yes.

19           THE COURT:  All right.  So she summarized truthfully

20   and accurately the conduct that you're charged with?

21           THE DEFENDANT:  Yes.

22           THE COURT:  All right.  Ms. Lunkenheimer, do you

23   have a copy of the information?  I don't -- do you have

24   that --

25           MS. LUNKENHEIMER:  I do, your Honor.

1    THE COURT:  Could you give that to Ms. Settles?

2    MS. LUNKENHEIMER:  Yes.

3    THE COURT:  Because we're going to have Mr. Demsky

4  enter his plea and I didn't have a copy with me.

5    All right.  I'm going to make -- is there any other

6  questions, Mr. Lammendola, that you think I should ask?

7    MR. LAMMENDOLA:  No, your Honor, I believe you

8  covered everything.

9    THE COURT:  All right.  Ms. Lunkenheimer?

10    MS. LUNKENHEIMER:  No, your Honor.

11    THE COURT:  All right.  I make the following

12  findings:  I find that the Defendant is fully alert,

13  competent and capable of entering an informed plea.  I make

14  the finding that your plea is knowing and voluntary, that

15  it's supported by an independent basis in fact containing

16  each of the essential elements of the offenses charged.  And

17  I find that the plea of guilty that you're about to enter is

18  therefore accepted and you will be adjudged guilty upon

19  entering your plea.

20    So, Ms. Settles, would you take Mr. Demsky's plea?

21    THE DEPUTY CLERK:  Yes, your Honor.

22    THE COURT:  Please stand, sir.

23    THE DEPUTY CLERK:  Vincent Joseph Demsky, you've

24  been charged in Criminal Indict -- I'm sorry, in Information

25  Number 11-577, in violation of 21 U.S.C. Section 846,

1  attempted possession of Oxycodone; how do you plead, guilty

2  or not guilty?

3         THE DEFENDANT:  Guilty.

4         THE DEPUTY CLERK:  Thank you.

5         THE COURT:  Okay, sir, I'll accept your guilty plea

6  and I find it's knowingly and voluntarily entered, you're

7  going to be adjudged guilty of this offense.  You can be

8  seated, sir.

9         Now, Mr. Lammendola, you filed a motion, and I

10  didn't get a response from Ms. Lunkenheimer yet, asking me to

11  impose special probation pursuant to 18 U.S.C. Section 3607.

12         MR. LAMMENDOLA:  3607.

13         THE COURT:  What's your position on that?

14         MS. LUNKENHEIMER:  Yes, your Honor, it's our initial

15  position that a finding of guilt under the statute is

16  necessary for this provision to even be applicable and,

17  therefore, that is why we haven't responded yet to the

18  motion.  I expect and we would like the opportunity to see

19  the Probation Office's report, the PSR, the presentence

20  report to confirm this, but it's possible that Mr. Demsky

21  does not statutorily qualify for this provision because of

22  some prior convictions back -- they're old ones, but

23  nonetheless they appear to be controlled substance

24  convictions back in the '80s and early '90s, I believe.

25         MR. LAMMENDOLA:  But they were primarily possession

1 charges back in early 1980, Judge, '81.

2     THE COURT: But were they convictions or ARD?

3     MR. LAMMENDOLA: You know, from the reports I have

4 on it, they look like ARD, but I can't -- I'm not sure about

5 it. I'm sure the presentence report will, you know,

6 elucidate that when the report --

7     MS. LUNKENHEIMER: Your Honor, I don't have it in

8 front of me and the Pretrial Services Officer does, so maybe

9 he can speak to it, but as I remember --

10     THE COURT: Mr. Salzburg, how are you?

11     MS. LUNKENHEIMER: -- some were -- some were not.

12     MR. SALZBURG: Your Honor, how are you today? I'm

13 only -- I'm looking at the report that was written by Ms.

14 Roscoe and there is a criminal history in here that does have

15 some dispositions to it.

16     THE COURT: What are the dispositions?

17     MR. SALZBURG: All right. Briefly, in June of 1980,

18 there was a narcotic possession charge in Wildwood where he

19 got six days confinement in municipal court. There was

20 another conviction in '81, Cape May County, 60 days suspended

21 confinement. In '82 there was an assault case, but he was

22 convicted of criminal mischief and simple assault, two years

23 probation on that. In '82 there was an FOJ that was

24 transferred to another jurisdiction; there's a no-disposition

25 on a criminal attempt theft, auto. In 1984, there's a theft

1 charge and some related offenses, no disposition. In '88,

2 possession of a controlled substance in Ridley Township with

3 no disposition. And that appears to be the prior record.

4 THE COURT: All right. So is it agreeable to

5 everyone if we order a presentence investigation and then

6 I'll just hold this under advisement?

7 MS. LUNKENHEIMER: Yes, your Honor.

8 MR. LAMMENDOLA: That's fine, Judge.

9 MS. LUNKENHEIMER: I would like to say that,

10 separate from what his eligibility is under the statute, the

11 Government may be opposing that, taking the position that

12 under the circumstances of this case it's not an appropriate

13 disposition.

14 THE COURT: Because it's at a Defense contractor?

15 MS. LUNKENHEIMER: Right, because of the nature of

16 the employment and the work that was being done.

17 THE COURT: Okay.

18 MS. LUNKENHEIMER: So we will file a motion on that

19 and if your Honor --

20 THE COURT: Why don't I do this? I'll just deny it

21 without prejudice and then after the presentence report is

22 done, if we need to --

23 MR. LAMMENDOLA: Readdress it?

24 THE COURT: -- you can renew it, if you want --

25 MS. LUNKENHEIMER: Yes, your Honor, because I --

1          THE COURT:  -- before sentencing.

2          MS. LUNKENHEIMER:  -- do believe it's -- it's really

3    a sentencing motion, as we understand it.

4          THE COURT:  Okay.  All right, very good.

5          Now, Mr. Salzburg, I got your report about bail and

6    it sounds like everybody is agreeable that Mr. Demsky should

7    remain on the conditions that are in place right now?

8          MR. SALZBURG:  Yes, your Honor.

9          THE COURT:  Any compliance issues that you've had?

10         MR. SALZBURG:  Not that I can see in the report,

11   your Honor.

12         THE COURT:  Okay, I didn't see any either.

13         MS. LUNKENHEIMER:  Your Honor, it does say -- and

14   I'm agreeable that he remain on pretrial release, but just if

15   he could be reminded.  It does say here that since his

16   release he's missed a few scheduled contacts, if he could

17   just be reminded not to miss those and the importance of

18   them, I would appreciate it.

19         THE COURT:  Ms. Roscoe enjoys seeing you --

20         THE DEFENDANT:  I never --

21         THE COURT:  -- Mr. Demsky --

22         THE DEFENDANT:  -- I never missed no appointments.

23         THE COURT:  -- so just keep your appointments with

24   her.

25         THE DEFENDANT:  I never missed anything.  She said

1    it was okay for me not to show up because I was working.

2            THE COURT:  Okay.  All right.

3            THE DEFENDANT:  I never missed any appointments.

4            THE COURT:  Okay, that's fine.  Just keep up your

5    good track records with Pretrial Services --

6            THE DEFENDANT:  Okay, thank you, I will.

7            THE COURT:  -- it sounds like they're pleased with

8    your result.

9            All right.  I'm going to order a presentence report

10   and -- I don't have the calendar here -- do you want me to

11   set a date for sentencing now?

12           MS. LUNKENHEIMER:  You don't have to, your Honor, if

13   you want to send it out, that's fine with me.

14           THE COURT:  All right.  I'll pick a date and I'll

15   send a notice out.

16           MR. LAMMENDOLA:  That's fine, Judge.

17           THE COURT:  Do you guys have any vacations, the

18   three of you, this summer scheduled?  I don't want to

19   schedule it during someone's vacation.

20           MR. LAMMENDOLA:  No, I don't anyway.

21           THE COURT:  How about you, Mr. Demsky?

22           THE DEFENDANT:  No, I don't have anything planned.

23           THE COURT:  Okay.

24           MS. LUNKENHEIMER:  Your Honor, I think that Ms.

25   Taylor and I will not take vacation at the same time, so that

1  one will be available --

2         THE COURT:  So one of you will be here?

3         MS. LUNKENHEIMER:  Yes.

4         THE COURT:  Okay.  All right, I'll pick a date and

5  I'll send a notice out.

6         MR. LAMMENDOLA:  That's fine, Judge.

7         MS. LUNKENHEIMER:  Thank you.

8         THE COURT:  All right.  Is there anything else we

9  have to do today?

10        MS. LUNKENHEIMER:  No, your Honor.

11        THE COURT:  Has Mr. Demsky -- he's been processed,

12  right?

13        MS. LUNKENHEIMER:  I believe so, yes, I assume he

14  was processed the day of his arrest.

15        THE COURT:  Okay.  Mr. Lammendola, anything from

16  you?

17        MR. LAMMENDOLA:  No, your Honor.

18        THE COURT:  All right.  Mr. Demsky, good luck to

19  you, all right?

20        THE DEFENDANT:  Thank you, your Honor.

21        THE COURT:  I hope things work out and --

22        THE DEFENDANT:  Thank you.

23        THE COURT:  -- thank you very much for coming in

24  today.

25        THE DEFENDANT:  Thank you.

1           THE COURT:  Ms. Lunkenheimer?  Thank you.

2           MR. LAMMENDOLA:  Thank you, Judge.

3           MS. LUNKENHEIMER:  I just want to introduce you to a

4    new Special Assistant, your Honor.

5           THE COURT:  Oh, okay, great.

6           (Discussion held off the record.)

7           THE COURT:  All right.  Thanks, Nelson.  We're

8    adjourned.

9           (Hearing adjourned at 9:54 o'clock a.m.)

10                                 *  *  *

CERTIFICATION


      I hereby certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


S:/Geraldine C. Laws, CET        Date 10/3/12
Laws Transcription Service